## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

RANDOLPH STANLEY,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

Civil Action No. 24-2647-TDC
Crim. Action No. 22-0458-TDC

### MEMORANDUM OPINION

Petitioner Randolph Stanley has filed a Motion to Vacate, Set Aside, or Correct the Sentence pursuant to 28 U.S.C. § 2255 ("the § 2255 Motion"). In the § 2255 Motion, Stanley challenges his sentence in the underlying criminal action on the basis of ineffective assistance of counsel. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2255 Proceedings for the United States District Courts ("2255 Rules"); D. Md. Local R. 105.6. For the reasons set forth below, the § 2255 Motion will be DENIED.

### BACKGROUND

### I.    The Offenses

On December 22, 2022, the Government filed a two-count criminal Information charging Stanley with Conspiracy to Commit Wire Fraud and Student Loan Fraud, in violation of 18 U.S.C. § 371, and Student Loan Fraud, in violation of 20 U.S.C. § 1097(a).

According to a Stipulation of Facts agreed to by Stanley, from approximately 2006 to June 2021, Stanley and his co-conspirators engaged in a scheme to defraud the United States

Department of Education ("DOE") and thereby obtained funds from DOE through the use of false statements and forgery. Stanley was a manager or supervisor of the scheme, which involved five or more participants. Specifically, Stanley and his co-conspirators recruited over 60 student participants ("the students") to apply for and enroll in post-graduate programs at various universities or other academic institutions ("the schools") and assisted with the coursework for these programs, such as by completing assignments and participating in online classes on behalf of the students, in exchange for a fee. In turn, the students fraudulently received credit for the courses, and in many cases, degrees from the schools, without completing the necessary work. At Stanley's direction, the students sought federal student loans by submitting applications to the DOE, even though many were not qualified for the academic programs for which they sought financial aid, and were then awarded funds sent directly to the schools to pay their tuition. At least 60 students later received student loan refunds, which the schools disbursed to the students after their tuition was paid. As the ringleader of the scheme, Stanley received a portion of the student loan refunds.

Stanley used a portion of the student loan refunds to make payments to co-conspirators for completing and submitting coursework on behalf of the students and acted at Stanley's direction either to directly submit the students' completed assignments using the students' login credentials or to provide the completed assignments to Stanley or the student for submission. By using the student loan refunds in this manner, Stanley ensured that the students remained enrolled in the schools and thus were eligible for more student loan refunds during the next academic term. In total, Stanley and his co-conspirators caused the DOE to disburse at least $5,830,639 in federal student loan funds, of which over $5,652,292 remained outstanding.

2

## II.    The Guilty Plea

On March 21, 2023, Stanley, who was represented by retained defense counsel Justin M. Hollimon, pleaded guilty to both counts of the Information pursuant to a plea agreement originally dated December 12, 2022.  As part of the plea agreement, the parties agreed that the total offense level under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") was 29, including, among other enhancements, an 18-level increase because the actual or intended loss amount was more than $3,500,000 but not more than $9,500,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(J), and a 3-level increase because Stanley was a manager or supervisor of criminal activity involving five or more participants, pursuant to U.S.S.G. § 3B1.1(b).  Stanley also agreed to the entry of a restitution order for the full amount of the actual loss to the victim, consisting of at least $5,830,639 "reflecting the outstanding balance on all federal student loans" obtained as part of the scheme, to be reduced by loan payments made to the DOE.  Plea Agreement ¶ 16, ECF No. 63.  In signing the plea agreement, Stanley attested that he had "read this Agreement," that he had "carefully reviewed every part of it with my attorney," and that he had understood and voluntarily agreed to it.  *Id.* at 9.  His attorney also signed the plea agreement to confirm that he had reviewed it with Stanley, and that he believed that Stanley's decision to sign the plea agreement was informed and voluntary.

The Stipulation of Facts, signed by Stanley, was an attachment to the plea agreement.  In signing the plea agreement, Stanley further affirmed that he had reviewed the Factual and Advisory Guidelines Stipulation with his attorney and did "not wish to change any part of it," and was "completely satisfied with the representation of [his] attorney." *Id.*

At the guilty plea hearing on March 21, 2023, the Court reviewed the charges, maximum penalties, and plea agreement with Stanley and confirmed that he had had the opportunity to read

and discuss the plea agreement with his attorney before he signed it and that he understood its terms. The Court specifically reviewed the parties' Guidelines calculations and Stanley's agreement to a restitution order in an amount of $5,830,639, to be offset by any payments on those loans, and confirmed that Stanley understood those terms. When the Court asked Stanley whether he was satisfied with his attorney's advice, representation, and counsel in the case, Stanley responded, "Yes, your Honor." Guilty Plea Hrg. Tr. at 4–5, Ans. Ex. 1, ECF No. 96-1.

During the guilty plea hearing, the Government read the Stipulation of Facts into the record, which included the facts that Stanley was a manager and supervisor of the scheme, that the scheme had five or more participants, and that he had caused the DOE to disburse "at least $5,830,639 in federal student loan funds," of which "as of December 2022, over $5,652,292 in students loans to the [DOE] remained outstanding." *Id.* at 27. When the Court asked Stanley whether he agreed with the Government's summary of the facts and whether he did the things that the Government said he did, Stanley responded, "Yes, your Honor." *Id.* at 28. The Court ultimately accepted Stanley's guilty plea as knowing and voluntary and adjudged him guilty on both counts.

### III.    Sentencing

On May 23, 2023, the United States Probation and Pretrial Services Office ("Probation") filed a Pre-sentence Investigation Report ("PSR") which found that the total offense level under the Guidelines was 28 and that Stanley's criminal history category was I, resulting in an applicable guideline range of 78 to 97 months of imprisonment. The PSR's calculation of the total offense level included the agreed-upon 18-level increase because the actual or intended loss amount was more than $3,500,000 but not more than $9,500,000 and the 3-level enhancement under U.S.S.G. § 3B1.1(b) due to Stanley's role as a manager or supervisor of a scheme involving five or more

individuals. The PSR also included information about Stanley's personal and family background, including that he is married and the father of two children, ages 14 and 7, and that Stanley's brother is disabled and is limited in his speech and walking, that he receives housing through a Maryland disability program, and that Stanley is his brother's legal guardian.

In his sentencing memorandum, Stanley's defense counsel argued that Stanley should receive a downward variance to a sentence of 18 months of imprisonment, to be served on home detention. The defense counsel focused on Stanley's motive for the crime, which was not financial gain but was instead an altruistic interest in helping other people attain an education to be able to gain job security as part of the mission of his church, of which he is a pastor. The sentencing memorandum also stated that Stanley is a married father of two children and that with a term of imprisonment he would "lose his Church, his job, and more importantly, time with his children." Def.'s Sentencing Mem. at 5, ECF No. 70.

At the sentencing hearing on August 29, 2023, the Government advocated for a mid-Guideline range sentence of 87 months imprisonment. Defense counsel presented five witnesses who requested leniency on behalf of Stanley. Reverend Silas Nicol, a pastor in Stanley's church, recounted Stanley's good deeds in the community and noted Stanley's need to be able to care for his wife and two young children. Pastor Ken Touray testified to Stanley's support for members of the congregation, recounted a conversation with Stanley's young daughter, and expressed concern for her in light of the impending sentence. Kadie Hayes-Esi, an immigrant from Sierra Leone, described how Stanley had been a mentor to her and provided her both advice and financial assistance. Mariama Bah, Stanley's sister, testified that Stanley is like a father figure to her who assisted her in obtaining her education. Dr. Alicia Williams, a military veteran and a former co-

worker of Stanley from when they worked as counselors at Potomac Job Corps Center, attested to his good character and his good works in the community.

In argument, defense counsel advocated for a downward variance to a below-Guidelines sentence of 18 months imprisonment, with at least part of that time served as home detention. Defense counsel emphasized that Stanley acted out of good intentions to help immigrants achieve an education. He also argued that incarceration would have an adverse impact on his family because he would lose "those valuable moments with his children," referenced Pastor Touray's conversation with Stanley's six-year-old daughter, and noted as to Stanley's 14-year-old son that "high school years are critical years for any given child," and that he would likely have graduated from high school by the time Stanley is released from prison, absent leniency. Sentencing Hrg. Tr. at 26–27, Ans. Ex. 2, ECF No. 96-2.

Ultimately, the Court granted Stanley a substantial downward variance and sentenced him to 48 months of imprisonment, to be followed by 36 months of supervised release, with a restitution order of $5,648,238, corresponding to the outstanding balance on the fraudulent student loan funds disbursed by the DOE, to be reduced by additional payments made by individual borrowers or others to the DOE

In so ruling, the Court noted that Stanley's personal history and characteristics, including the fact that his "children . . . are young" and "will obviously be impacted if he is imprisoned," were mitigating factors, and found that a downward variance was warranted primarily to avoid unwarranted disparities among similar defendants. *Id.* at 34–35. The Court noted, however, that in its view, the fraud was "a very serious crime" with adverse impacts on the Government and on other students or prospective students who were not part of the fraud scheme. *Id.* at 33. Accordingly, the Court concluded that defense counsel's recommendation of 18 months of

imprisonment was "too low" to "reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to provide adequate deterrence." *Id.* at 35.

## DISCUSSION

In the § 2255 Motion, Stanley collaterally attacks his sentence based on his claim of ineffective assistance of counsel. Specifically, he asserts that his attorney's performance was constitutionally inadequate in three ways. First, Stanley argues that his defense counsel did not effectively object to or correct errors in the PSR, including in the statement of facts. Second, Stanley argues that his defense counsel failed to negotiate effectively the loss amount and the restitution amount because the $5 million loss amount "grossly overrepresents his offense conduct." § 2255 Mot. at 8, ECF No. 90. Third, Stanley argues that his defense counsel did not effectively argue mitigating factors at sentencing because he did not address Stanley's "familial complications as mitigating factors at sentencing, despite the fact that his family heavily relies on him for support and struggle[s] without him." *Id.* at 7. Stanley argues that had his defense counsel taken these steps, he would have received a more lenient sentence.

## I.    Legal Standards

### A.    Section 2255 Motions

A prisoner in federal custody may move to vacate, set aside, or correct his sentence on the basis that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden of proof and must establish the claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). In § 2255 proceedings, a hearing is necessary where there are disputed issues of fact that need to be resolved

in order for the court to rule on the motion. *See* 28 U.S.C. § 2255(b); *United States v. Witherspoon*, 231 F.3d 923, 927 (4th Cir. 2000). In considering the record, a court should give sworn statements made in a guilty plea colloquy under Federal Rule of Criminal Procedure 11 a "strong presumption of verity," and in the absence of extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations omitted). Therefore, a court may, "without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements" made during a Rule 11 guilty plea colloquy in the absence of extraordinary circumstances. *Id.* at 221–22. Where, as set forth below, some of Stanley's claims are contradicted by statements at the guilty plea hearing, and the Court finds that it may rule on the § 2255 Motion based on the present record without resolving factual disputes or making credibility determinations, the Court declines to hold an evidentiary hearing. *See* 2255 Rule 8(a).

### B.     Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court held that to prevail on a claim of ineffective assistance of counsel, a petitioner must establish two prongs: deficient performance and prejudice. *Id.* at 692. First, the petitioner must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficiency exists when "counsel's representation fell below an objective standard of

reasonableness" under "prevailing professional norms." *Id.* at 688; *see Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "Judicial scrutiny of counsel's performance must be highly deferential" and apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Second, a petitioner must show prejudice in that the deficient performance by counsel consisted of errors that "were so serious as to deprive the defendant of a fair [proceeding]" whose result was reliable. *Id.* at 687. To establish such prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

## II.    Loss Amount and Alleged Factual Errors

Starting with Stanley's arguments that his defense counsel did not effectively object to or correct errors in the Stipulation of Facts or effectively negotiate the loss amount or restitution amount, the Court finds that there was no ineffective assistance of counsel in relation to these issues. As to alleged factual errors, Stanley focuses on the loss amount used for the Guidelines calculation, the restitution amount, and the finding that Stanley was a manager or supervisor for purposes of a Guidelines role enhancement. There was no basis for defense counsel to contest

these issues at sentencing because Stanley had previously agreed multiple times to these facts. Specifically, the Stipulation of Facts signed by Stanley as part of the plea agreement stated that "Stanley and his co-conspirators caused the DOE to disburse at least $5,830,639 in federal student loan funds," and that "[o]f the funds disbursed, over $5,652,292.00 in student loans to the DOE remain outstanding." Stip. of Facts at 11, Plea Agreement Ex. A, ECF No. 63-1. The Stipulation of Facts also included the fact that "Stanley was a manager / supervisor of the scheme, which involved five or more individuals." *Id.* at 12. By signing the Stipulation of Facts and the plea agreement, Stanley agreed that he had read the factual stipulation, reviewed it with his attorney, did not wish to change any part of it, and was satisfied with his attorney's representation.

Then, at the guilty plea hearing, the Government read the Stipulation of Facts into the record, including the facts relating to the loss amount and Stanley's role as a manager or supervisor, and Stanley stated that he agreed with those facts. The Court also independently reviewed the plea agreement with Stanley, including the provision in which he agreed to the entry of a restitution order in the amount of $5,830,639, and confirmed that Stanley had agreed to that term. Where Stanley had admitted these facts multiple times, including under oath in open court, there was no basis upon which defense counsel could have contested the loss amount or Stanley's role at sentencing. To the extent that Stanley may be presently arguing that his defense counsel should not have allowed him to agree to those facts in relation to the plea agreement, Stanley has notably provided no factual basis to support the view that the agreed-to facts were inaccurate, or that defense counsel had any reason to believe that they were inaccurate, at the time that the plea agreement was signed. Specifically, there has been no showing that the DOE did not disburse over $5.8 million in funds in relation to the fraud scheme, that over $5.6 million did not remain outstanding, or that Stanley was not a manager or supervisor of five or more co-conspirators.

Under these circumstances, the Court finds no basis to conclude that defense counsel provided ineffective assistance in relation to the alleged factual errors.

Relatedly, Stanley further argues that at the time of his sentencing, his defense counsel failed to use favorable case law to argue that the loss amount should have been determined based only on the actual loss amount rather than the intended loss amount. This argument fails because the Stipulation of Facts to which Stanley agreed specifically stated that of the $5,830,639 disbursed by the DOE in relation to the fraud, "over $5,652,292.00 in student loans to the DOE remain outstanding," which means that this latter figure represents actual loss, not merely intended loss. *Id.* at 11. Where Stanley acknowledged, and has presently provided no basis to contest, that there was an actual loss of over $5.6 million, defense counsel did not act ineffectively in failing to argue that the loss amount should have been determined based only on actual loss, since it would not have changed the loss amount used to calculate the total offense level under the Guidelines. For the same reason, the argument that defense counsel was ineffective for failing to contest the restitution amount, which was based on actual loss, also fails.

Accordingly, the Court finds that defense counsel did not act ineffectively in failing to object to any of the alleged factual errors, to the loss amount used in calculating the Guidelines range, or to the restitution amount.

### III.    Family Circumstances

Stanley also argues that his defense counsel rendered ineffective assistance of counsel because he did not highlight Stanley's family circumstances as mitigating factors at sentencing. Specifically, Stanley argues that his defense counsel failed to emphasize the impact of his imprisonment on his wife and children, failed to inform the court that he is the primary caretaker

of his disabled brother, and failed to note that his father had passed away during the proceedings such that his estate in Sierra Leone remains unresolved.

In general, although defense counsel has a duty to present mitigating evidence at sentencing, it is not deficient performance for counsel to fail to investigate or argue every possible line of mitigating evidence. *See Campbell v. Polk*, 447 F.3d 270, 282 (4th Cir. 2006); *Holiday v. United States*, No. DKC-08-2341, 2011 WL 3476567, at *3 (D. Md. Aug. 8, 2011) (finding no deficient performance where counsel failed to call a child psychologist to testify about the effects of incarceration on the defendant's son and instead chose to "focus his attention on other matters at sentencing"). Upon review of the record, the Court finds that most of the identified mitigating facts were presented to the Court in some form, whether through the PSR, the sentencing memorandum, or during the sentencing hearing. The PSR, as well as defense counsel's sentencing memorandum, stated that Stanley was married and was the father of two children, ages 14 and 7. The PSR also informed the Court that Stanley was the legal guardian for his disabled brother, who has speech and walking difficulties, and who resides in housing provided by a Maryland disability program. It also noted that Stanley's father had passed away.

At the sentencing hearing, through the presentation of witnesses and his argument, defense counsel focused on Stanley's community service, particularly as a pastor, and his altruistic motive for the criminal activity of trying to help others in need, but he also devoted attention to Stanley's family circumstances. He called a witness, Pastor Ken Touray, who specifically discussed the impact that Stanley's imprisonment would have on Stanley's young daughter and recounted a conversation he had had with her. In his own argument, defense counsel highlighted the ages of Stanley's children, asserted that Stanley wanted "to be part of their life," and noted that "what's at stake is losing . . . valuable moments with his children in the future," and that Stanley's high-

school age son was entering "critical years for any given child" and would likely graduate before Stanley was released from prison, absent leniency. Sentencing Hrg. Tr. at 26–27. In imposing the sentence, the Court noted that Stanley "has a wife and two children . . . who will obviously be impacted if he is imprisoned." *Id.* at 34.

Where defense counsel argued family circumstances as a mitigating factor at sentencing, the Court does not find his decision to focus on the impact on Stanley's children rather than Stanley's brother constituted ineffective assistance of counsel, particularly where the core facts relating to Stanley's brother were already known to the Court through the PSR, and where even though Stanley is his brother's legal guardian and is best able to communicate him, there is no dispute that Stanley's brother resides in a social service agency facility, not with the Stanley family. The failure to inform the Court of Stanley's need to travel to Sierra Leone to help settle his father's estate was not ineffective because it related to a minor point which, in light of all of the other considerations, would have had no material impact on the sentence.

Even if the failure to discuss the circumstances of Stanley's brother and father's estate could be deemed to be deficient performance under *Strickland*, Stanley has not demonstrated prejudice. At sentencing, the Court accepted that Stanley's family circumstances were a mitigating factor, and it granted a substantial downward variance primarily based on the need to avoid unwarranted disparities, but it disagreed with Stanley's view of the seriousness of the offense and concluded that in light of the nature and circumstances of the offense, a 48-month sentence was necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide adequate deterrence, and that defense counsel's proposed lower sentence was insufficient to meet these purposes. In light of the Court's view of this case and reasons for its sentence, the Court finds that Stanley has not demonstrated a reasonable probability that had

13

defense counsel presented specific argument relating to Stanley's brother, father's estate, or both, the result of his sentence would have been different. Accordingly, Stanley's claim of ineffective assistance of counsel fails. The § 2255 Motion will therefore be denied.

## IV.   Certificate of Appealability

Stanley has no absolute entitlement to appeal a district court's denial of the § 2255 Motion. *See* 28 U.S.C. § 2253(c)(1)(B). To appeal this Court's denial of the § 2255 Motion, Stanley must obtain a certificate of appealability ("COA"). *Id.* A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a district court dismisses a Motion to Vacate solely on procedural grounds, a prisoner must demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling'" in order to be entitled to a COA. *Rose v. Lee*, 252 F.3d 676,684 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a district court reaches the merits, as it has here, a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473,484 (2000). Because Stanley has made no such showing, this Court will not issue a COA. Although this Court declines to issue a COA, Stanley may still seek a COA from the Fourth Circuit. *See* Fed. R. App. P. 22(b)(1) (stating that if a district judge denies a COA, a petitioner "may request a circuit judge to issue it").

14

## CONCLUSION

For the foregoing reasons, Stanley's Motion to Vacate, Set Aside, or Correct the Sentence pursuant to 28 U.S.C. § 2255 will be DENIED. The Court declines to issue a certificate of appealability. A separate Order shall issue.

Date: March 30, 2026

THEODORE D. CHUANG
United States District Judge